1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   LESLIE LYNNE TANKERSLEY,                  Case No. 1:22-cv-00029-CDB (SS)

12                   Plaintiff,                ORDER GRANTING PLAINTIFF'S
                                               MOTION FOR SUMMARY JUDGMENT[1]
13          v.
                                               (Docs. 13, 14, 17)
14   COMMISSIONER OF SOCIAL SECURITY,

15                   Defendant.

16

17

18          Plaintiff Leslie Lynne Tankersley ("Plaintiff") seeks judicial review of a final decision of

19   the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application

20   for disability benefits under the Social Security Act.  (Doc. 1).  The matter is currently before the

21   Court on the parties' briefs, which were submitted without oral argument.  (Docs. 13, 14, 17).

22   Upon review of the Administrative Record ("AR") and the parties' briefs, the Court finds and

23   rules as follows.

24   I.     BACKGROUND

25          A.  Administrative Proceedings and ALJ's Decision

26          Plaintiff filed a Title II application for disability insurance benefits on January 14, 2020.

27   _____

28          [1] Based on the parties' expression of consent, on July 27, 2022, this action was reassigned to a
     U.S. magistrate judge for all purposes, pursuant to 28 U.S.C. § 636(c)(1).  (Doc. 16).

(AR 187-90). Plaintiff's application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (AR 84-114, 132-33). On April 28, 2021, ALJ Suzette Knight held a hearing, during which Plaintiff, represented by counsel, and an independent vocational expert testified. (AR 53-83). The ALJ issued her decision on May 12, 2021, finding Plaintiff not disabled. (AR 15-26). On November 4, 2021, the Appeals Council declined Plaintiff's request for review. (AR 1-3).

In her decision, the ALJ engaged in the five-step sequential evaluation process set forth by the Social Security Administration. 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 30, 2018, the alleged onset date. (AR 17). At step two, the ALJ determined that Plaintiff had the following severe impairments: "fibromyalgia, polymyositis and dermatomyositis, and obesity." (AR 17).

At step three, the ALJ found that Plaintiff did not have an impairment, or combination of impairments, that met or medically exceeds the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 18-19). Of relevance to the arguments before the Court, the ALJ stated she considered Plaintiff's fibromyalgia under Social Security Ruling ("SSR") 12-2p, which "describes the evidence needed to establish a medically determinable impairment of fibromyalgia." (AR 18). The ALJ noted that under SSR 12-2p a claimant can establish fibromyalgia "by providing evidence from an acceptable medical source that the claimant has a history of widespread pain that has persisted for at least 3 months and at least 11 positive tender points on physical examination" and "other disorders that could cause the symptoms or signs were excluded." (AR 18). The ALJ indicated that "[t]hese requirements have been taken into account in reaching the conclusions herein." (AR 18).

The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform a range of light work "except the claimant can stand and/or walk for a total of 4-hours in an 8-hour workday;" can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, and crawl, but never crouch; can tolerate occasional exposure to humidity, wetness, extreme cold, extreme heat, vibration, and atmospheric conditions, but can never be exposed to hazards such as work at unprotected heights or open

moving mechanical parts; and can tolerate no more than moderate noise level.  (AR 19).  Further, "[i]n addition to normal breaks, the claimant would be off task 8% of the time in an 8-hour workday (for bathroom breaks)."  (AR 19).

In formulating the RFC, the ALJ considered Plaintiff's testimony concerning why she could not maintain fulltime employment, her symptoms, and her daily activities.  (AR 20).  She also considered the medical record and opinions from Plaintiff's providers, the state agency consultants, and a consultative examiner.  (AR 21).  Overall, the ALJ concluded "the degree of limitation alleged [was] not supported in the record, noting that "the medical evidence of record reveals responsiveness to conservative treatment and medications, with improvement; control of her pain symptoms; … the ability to stand, walk, and move about normally without the use of a handheld assistive device;" "multiple virtually unremarkable objective/physical examinations;" and in December 2020, Plaintiff reported that her fibromyalgia was under control.  (AR 23-24).  The ALJ concluded that "the objective record, including the activities the claimant reports she engages in to healthcare providers, would support that the claimant could perform within the limitations of the residual functional capacity issued."  (AR 24).  Additionally, the ALJ noted that Plaintiff's daily activities—including "having a dog and two cats, performing personal care, dressing herself, preparing simple meals, taking medications, vacuuming, doing laundry, watering the lawn, having her granddaughter stay with her often, driving four times a week, going to the market/grocery shopping, and visiting a friend's house"—were "inconsistent with disability."  (AR 24).

At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a front officer worker as actually performed.  (AR 24-25).  Alternatively, the ALJ concluded at step five that jobs existed in significant numbers that Plaintiff could perform, including as a sorter and data-examination clerk.  (AR 25).  Thus, the ALJ concluded that Plaintiff had not been under a disability from December 30, 2018, through the date of the decision.  (AR 26).

**B.  Medical Record and Hearing Testimony**

The relevant hearing testimony and medical record were reviewed by the Court and will

1    be referenced below as necessary to this Court's decision.

2    **II.    STANDARD OF REVIEW**

3    A district court's review of a final decision of the Commissioner of Social Security is

4    governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

5    Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

6    is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial

7    evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

8    conclusion."  (*Id*. at 1159) (quotation and citation omitted).  Stated differently, substantial

9    evidence equates to "more than a mere scintilla[,] but less than a preponderance."  (*Id*.) (quotation

10   and citation omitted).  In determining whether the standard has been satisfied, a reviewing court

11   must consider the entire record as a whole rather than searching for supporting evidence in

12   isolation.  (*Id*.)

13   The court will review only the reasons provided by the ALJ in the disability determination

14   and may not affirm the ALJ on a ground upon which he did not rely.  Social Security Act § 205,

15   42 U.S.C. § 405(g).  In reviewing a denial of benefits, a district court may not substitute its

16   judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the

17   evidence is susceptible to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d

18   1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account

19   of an error that is harmless.  (*Id*.).  An error is harmless where it is "inconsequential to the

20   [ALJ's] ultimate nondisability determination."  (*Id*) (quotation and citation omitted).  The party

21   appealing the ALJ's decision generally bears the burden of establishing that it was

22   harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

23   A claimant must satisfy two conditions to be considered "disabled" and eligible for

24   benefits within the meaning of the Social Security Act.  First, the claimant must be "unable to

25   engage in any substantial gainful activity by reason of any medically determinable physical or

26   mental impairment which can be expected to result in death or which has lasted or can be

27   expected to last for a continuous period of not less than twelve months."  42 U.S.C. §

28   1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only

4

1    unable to do his previous work[,] but cannot, considering his age, education, and work

2    experience, engage in any other kind of substantial gainful work which exists in the national

3    economy." 42 U.S.C. § 1382c(a)(3)(B).

4         The Commissioner has established a five-step sequential analysis to determine whether a

5    claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the

6    Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the

7    claimant is engaged in "substantial gainful activity," the Commissioner must find that the

8    claimant is not disabled. 20 C.F.R. § 416.920(b).

9         If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

10   two. At this step, the Commissioner considers the severity of the claimant's impairment. 20

11   C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of

12   impairments which significantly limits [his or her] physical or mental ability to do basic work

13   activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's

14   impairment does not satisfy this severity threshold, however, the Commissioner must find that the

15   claimant is not disabled. (*Id.*).

16        At step three, the Commissioner compares the claimant's impairment to impairments

17   recognized by the Commissioner to be so severe as to preclude a person from engaging in

18   substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more

19   severe than one of the enumerated impairments, the Commissioner must find the claimant

20   disabled and award benefits. 20 C.F.R. § 416.920(d).

21        If the severity of the claimant's impairment does not meet or exceed the severity of the

22   enumerated impairments, the Commissioner must pause to assess the claimant's "residual

23   functional capacity." Residual functional capacity (RFC), defined generally as the claimant's

24   ability to perform physical and mental work activities on a sustained basis despite his or her

25   limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the

26   analysis.

27        At step four, the Commissioner considers whether, in view of the claimant's RFC, the

28   claimant is capable of performing work that he or she has performed in the past (past relevant

1  work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant

2  work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If

3  the claimant is incapable of performing such work, the analysis proceeds to step five.

4      At step five, the Commissioner considers whether, in view of the claimant's RFC, the

5  claimant is capable of performing other work in the national economy.  20 C.F.R. §

6  416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational

7  factors such as the claimant's age, education, and past work experience.  (*Id.*).  If the claimant is

8  capable of adjusting to other work, the Commissioner must find that the claimant is not

9  disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the

10  analysis concludes with a finding that the claimant is disabled and is therefore entitled to

11  benefits.  (*Id.*).

12      The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*,

13  180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the

14  Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

15  work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran*

16  *v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

17  **III.    ISSUES AND ANALYSIS**

18      In seeking judicial review of the Commissioner's final decision denying her application,

19  Plaintiff raises a single issue, asserting "[t]he ALJ performed an erroneous assessment of

20  Plaintiff's fibromyalgia."  (Doc. 13 at 4).  Plaintiff asserts that "[i]n light of the unique symptoms

21  and diagnostic process" linked to fibromyalgia, Ninth Circuit caselaw and SSR 12-2p provide

22  "the assessment applicable to fibromyalgia, including both evidence in support of fibromyalgia,

23  along with the forms of objective evidence which are irrelevant to, and which do not serve as

24  evidence against the severity or limiting effects of this condition."  (*Id.* at 11).  Plaintiff contends

25  that "[d]espite the clear and repeated Ninth Circuit law specifying the required assessment of

26  fibromyalgia, and the Ninth Circuit's reversal based on a failure to conform to this assessment,

27  the ALJ here transparently relied on precisely this erroneous reasoning to dismiss Plaintiff's

28  fibromyalgia."  (*Id.* at 13).  Plaintiff relies primarily on *Revels v. Berryhill*, 874 F.3d 648 (9th Cir.

1    2017), to support her argument that the ALJ erred in considering her fibromyalgia.  (*See generally*

2    *id.* at 11-19).

3    **A.  Consideration of Fibromyalgia under *Revels***

4    In *Revels*, the Ninth Circuit outlined "what fibromyalgia is, how it is properly diagnosed,

5    and what its symptoms are."  874 F.3d at 656.  The Ninth Circuit explained:

6    Fibromyalgia is a rheumatic disease that causes inflammation of the
     fibrous connective tissue components of muscles, tendons,
7    ligaments, and other tissue. Typical symptoms include chronic pain
     throughout the body, multiple tender points, fatigue, stiffness, and a
8    pattern of sleep disturbance that can exacerbate the cycle of pain
     and fatigue. What is unusual about the disease is that those
9    suffering from it have muscle strength, sensory functions, and
     reflexes that are normal. Their joints appear normal, and further
10   musculoskeletal examination indicates no objective joint swelling.
     Indeed, there is an absence of symptoms that a lay person may
11   ordinarily associate with joint and muscle pain. The condition is
     diagnosed entirely on the basis of the patients' reports of pain and
12   other symptoms. There are no laboratory tests to confirm the
     diagnosis.

13

14   *Id.* (quotations, citations, and alterations omitted).  Under SSR 12-2p, fibromyalgia is "a valid

15   basis for a finding of disability" and requires consideration of a "longitudinal record" in assessing

16   the RFC because fibromyalgia waxes and wanes and a claimant may have good and bad days.  *Id.*

17   at 657.  Thus, "[i]n evaluating whether a claimant's residual functional capacity renders them

18   disabled because of fibromyalgia, the medical evidence must be construed in light of

19   fibromyalgia's unique symptoms and diagnostic methods" and "[t]he failure to do so is error."  *Id.*

20   at 662.

21   Applying this approach in *Revels*, the Ninth Circuit concluded the ALJ erred in

22   considering the claimant's testimony concerning her symptoms because he did not consider such

23   "in light of her fibromyalgia diagnosis."  *Id.* at 666.  The ALJ "highlighted several examinations

24   that had mostly normal results, such as an X-ray and MRIs of Revels' neck and back, as well as

25   the nerve conduction and velocity study of her hands" and "cited medical records showing that, at

26   several doctor's appointments, Revels exhibited normal muscle strength, tone, and stability, as

27   well as a normal range of motion."  *Id.*  However, the Ninth Circuit explained that "the

28   examination results cited by the ALJ are perfectly consistent with debilitating fibromyalgia."  *Id.*

7

1    The Ninth Circuit concluded the ALJ also erred in concluding Revels received "conservative"

2    treatment because "Revels received facet and epidural injections in her neck and back, as well as

3    steroid injections in her hands" and "was prescribed a variety of medications for her pain,

4    including Valium, Vlector, Soma, Vicodin, Percocet, Neurontin, Robaxin, Trazodone, and

5    Lyrica" but the ALJ "provided no explanation why he deemed this treatment 'conservative.'" *Id.*

6    at 667.  The ALJ also found a "wide disparity" between Revels' symptom testimony and her

7    reports of her daily activities, relying on "Revels' function report in which she listed a number of

8    activities she might do in a day," including "using the bathroom, brushing her teeth, washing her

9    face, taking her children to school, washing dishes, doing laundry, sweeping, mopping,

10   vacuuming, going to a doctor's appointment for her or one of her children, visiting her mother

11   and father, cooking, shopping, getting gas, and feeding her dogs." *Id.* at 667-68.  However, the

12   Ninth Circuit concluded the ALJ erred in his assessment of Revels' daily activities because he

13   "failed to acknowledge that, over and over in the same report, Revels explained that she could

14   complete only some of the tasks in a single day and regularly needed to take breaks—which was

15   consistent with her symptom testimony" and Revels "repeatedly and consistently described the

16   severe limitations on her ability to complete daily activities." *Id.* at 668.

17          **B.  Arguments and Analysis**

18          Plaintiff argues the ALJ erred in considering her fibromyalgia in light of the guidance

19   provided in *Revels*.  Plaintiff first challenges the ALJ's reliance on "the very forms of normal

20   objective testing specifically designated as irrelevant to the assessment of fibromyalgia, such as

21   Plaintiff's normal strength, normal range of motion, normal sensation, and normal neurological

22   findings." (*Id.*).  Next, Plaintiff argues the ALJ "relied on further erroneous reasoning to discount

23   [her] fibromyalgia" when the ALJ pointed to improvement in Plaintiff's symptoms "from a

24   polymyalgia standpoint" because "continued fibromyalgia symptomology despite improvement

25   regarding other, non-fibromyalgia conditions is not grounds for discounting Plaintiff's

26   fibromyalgia." (*Id.* at 14).  Plaintiff challenges the ALJ's citation to a single appointment where

27   Plaintiff said her fibromyalgia symptoms were controlled because "assessment of fibromyalgia

28   must take into account that fibromyalgia waxes and wanes." (*Id.*).  Plaintiff argues the ALJ

1   miscategorized her fibromyalgia treatment as conservative because "Ninth circuit courts have

2   specified that treatments including steroids, injections, and heavy pain medication such as

3   narcotics are not conservative treatment, particularly in the context of fibromyalgia." (*Id.* at 15).

4   Additionally, Plaintiff asserts the "ALJ relied erroneously on [her] activities of daily living to

5   discount the severity of her condition" because her ability to complete some activities of daily

6   living ("ADLs") is not inconsistent with a disability finding.  (*Id.* at 16-18).  Finally, Plaintiff

7   briefly challenges the ALJ's failure to credit the opinions of her providers before arguing that

8   remand for an award of benefits is warranted under the credit-at-true rule.  (*Id.* at 18-21).

9       Defendant categorizes Plaintiff's arguments as only a challenge to "whether the ALJ

10   properly assessed her subjective symptom complaints."  (Doc. 14 at 2).  Defendant argues the

11   "ALJ properly evaluated Plaintiff's testimony and provided ample reasons supported by

12   substantial evidence for discounting Plaintiff's testimony."  (*Id.* at 4).  Defendant argues "the ALJ

13   found Plaintiff's statements inconsistent with numerous clinical findings in the record" based on

14   "unremarkable" physical examinations.  (*Id.* at 5-7).  Defendant asserts that Plaintiff's reliance on

15   *Revels* is unavailing because "[h]ere, unlike *Revels*, the ALJ did not reject Plaintiff's provider's

16   tender point findings or relay [*sic*] on normal diagnostic testing to discount Plaintiff's

17   fibromyalgia claims" but rather, "consistent with the regulations, the ALJ considered the

18   longitudinal record, acknowledged that Plaintiff's provider made tender point findings, found

19   fibromyalgia was a severe impairment, and limited Plaintiff to a reduced range of light work."

20   (*Id.* at 7).  Defendant highlights the ALJ's conclusion that "Plaintiff appeared to manage her

21   fibromyalgia symptoms with conservative treatment consisting largely of medication

22   management" and consideration of Plaintiff's ADLs in rejecting her symptom testimony.  (*Id.* at

23   8-9).  To the extent Plaintiff challenges the treatment of the medical opinions, Defendant argues

24   "the ALJ considered and discussed both the supportability and consistency when assessing the

25   cursory February 2020 checkbox form from Ehab A. Swehli, M.D. and the February 2021

26   checkbox form from Sara Taroumian, M.D."  (*Id.* at 11).  While Defendant asks that the Court

27   affirm the ALJ's decision, Defendant argues that if an error did occur, remand for further

28   proceedings rather than an award of benefits is appropriate.  (*Id.* at 14).

1      Plaintiff replies that Defendant did "little to address [her] contention that the ALJ relied

2  upon a mischaracterization of the record in assessing Plaintiff's fibromyalgia." (Doc. 17 at 3-4).

3  Specifically, Plaintiff argues that Defendant and the ALJ both improperly characterized her

4  treatment as conservative, contrary to Ninth Circuit precedent specifying that "treatments

5  including steroids, injections, and heavy pain medication such as narcotics are not conservative

6  treatment, particularly in the context of fibromyalgia." (*Id.* at 4).

7      The primary issue underlying the parties' arguments is whether the ALJ erred in rejecting

8  Plaintiff's testimony that her fibromyalgia prevented her from engaging in gainful employment.[2]

9  Before discrediting a claimant's subjective symptom testimony, the ALJ must first determine if

10  objective medical evidence of an underlying impairment "could reasonably be expected to

11  produce the pain or other symptoms alleged." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir.

12  2017). The second step is for the ALJ to describe specific, clear, and convincing reasons to reject

13  the claimant's testimony on the severity of her symptoms. *Id.* An ALJ's reasonings as to

14  subjective testimony "must be supported by substantial evidence in the record as a whole."

15  *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995); *see Carmicle v. Comm'r, SSA*, 544 F.3d

16  1144, 1161 (9th Cir. 2008) ("Accordingly, our next task is to determine whether the ALJ's

17  adverse credibility finding of Carmickle's testimony is supported by substantial evidence under

18  the clear-and-convincing standard.").

19      The ALJ here concluded Plaintiff's impairments could reasonably be expected to produce

20  the symptoms alleged. (AR 23). However, the reasons provided by the ALJ for rejecting

21  Plaintiff's testimony are not supported by substantial evidence in the record.

22      In rejecting Plaintiff's testimony, the ALJ first concluded "the medical evidence of record

23  reveals responsiveness to conservative treatment and medications, with improvement; control of

24  her pain symptoms; and the ability to stand, walk, and move about normally without the use of a

---

[2] The Court does not necessarily agree with Defendant's characterization of Plaintiff's arguments as challenging only the ALJ's treatment of her symptom testimony. However, because the Court finds the ALJ erred in considering the testimony such that remand is required, the Court need not address any remaining issues. *See Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990) ("Because we reverse, we do not reach the other arguments raised."); *see also Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (same); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[T]he Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

1   handheld assistive device" and "the medical evidence of record provides multiple virtually

2   unremarkable objective/physical examinations." (AR 23). However, as in *Revels*, "the

3   examination results cited by the ALJ are perfectly consistent with debilitating fibromyalgia."

4   *Revels*, 874 F.3d at 666. Each of the medical records discussed in the decision highlight

5   Plaintiff's continued complaints of pain despite treatment with medication. (*See* AR 20-21).

6   Further, the ALJ does nothing to explain how a single reference to Plaintiff's fibromyalgia being

7   "under control" discredits her testimony given the recognized nature of fibromyalgia to wax and

8   wane over time. *Revels*, 874 F.3d at 657.

9        Additionally, the ALJ concluded that while Plaintiff was "limited to a degree" in her

10  ADLs, the ADLs she did perform were "inconsistent with her complaints of prolonged and

11  consistent disabling functional limitations." (AR 24). The ALJ cited Plaintiff's April 9, 2020

12  report that she "started watching her diet and walking regularly" and a July 23, 2020 note that

13  Plaintiff's ADLs included "doing some housework, sweeping, mopping, vacuuming in spurts,

14  washing dishes, putting laundry into the washing machine, and shopping with a scooter." (AR 24

15  (citing AR 349, 407)). Similar to *Revels*, in citing Plaintiff's ADLs as justifying rejection of her

16  symptom testimony, the ALJ wholly failed to acknowledge the limitations Plaintiff included

17  when describing her ADLs. While Plaintiff did indicate in April 2020 that she started walking

18  regularly due to concerns around her blood glucose, the July 23, 2020 note contained qualifying

19  statements and limitations the ALJ did not acknowledge, including that Plaintiff could *only* put

20  laundry into the washing machine, grocery shop with an electric scooter and a ride provided, do

21  light cooking in a seated position, and drive "a little bit locally but only if necessary." (AR 349,

22  407).

23       The ALJ also indicated Plaintiff "testified to having a dog and two cats, performing

24  personal care, dressing herself, preparing simple meals, taking medications, vacuuming, doing

25  laundry, watering the lawn, having her granddaughter stay with her often, driving four times a

26  week, going to the market/grocery shopping, and visiting a friend's house." (AR 24). However,

27  review of the hearing transcript reveals the ALJ once again failed to acknowledge qualifying

28  statements Plaintiff made concerning her ADLs. While Plaintiff testified her granddaughter

stayed with her and her husband frequently, she did not describe any activities she engaged in

with her granddaughter or the level of care she provided her that would support a conclusion that

her granddaughter's visits were inconsistent with a disability finding.  (*See* AR 61).  Plaintiff

drove approximately four times a week but only in town at low speeds.  (AR 61, 70).  Concerning

cooking, she and her husband would make "something small for breakfast," such as scrambled

eggs or cereal, and she would start dinner but then sit down.  (AR 70-71).  As far as laundry, she

could put clothes in the washer but "cannot get them out of the washer."  (AR 70-71).  She

vacuumed once a week, not daily.  (AR 71).  Plaintiff explained she could water the lawn because

she is able to "stand for a minute and then sit for a minute."  (AR 71).  While Plaintiff had pets,

she did not provide care for them.  (AR 73).  The ALJ did nothing to explain how these more

limited activities were inconsistent with a finding of disability.

Thus, the ALJ erred in failing to provide clear and convincing reasons, supported by

substantial evidence, for rejecting Plaintiff's symptom testimony such that her decision must be

reversed.

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g)

or to order immediate payment of benefits is within the discretion of the district court.  *Harman v.

Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  "When a reviewing court reverses an administrative

agency determination, the proper course, except in rare circumstances, is to remand to the agency

for additional investigation or explanation."  *Miskey v. Kijakazi*, 33 F.4th 565, 575 (9th Cir. 2022)

(internal quotation marks omitted).  Remand for an award of benefits is only appropriate "where

no useful purpose would be served by further administrative proceedings and the record has been

thoroughly developed."  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir.

2014).  Even in the "rare circumstances" where remand may be appropriate, a court retains

discretion to remand for additional evidence rather than award benefits.  *Id.* at 1101-02.

Here, the Court concludes that remand for further proceedings is warranted because

additional administrative proceedings may remedy the deficiencies in the ALJ's decision.

1

## IV.    CONCLUSION AND ORDER

2          For the reasons stated above, the Court ORDERS as follows:

3    1.   Plaintiff's Motion for Summary Judgment (Doc. 13) is GRANTED;

4    2.   The decision of the Commissioner is reversed, and this matter is remanded back to the

5          Commissioner of Social Security for further proceedings consistent with this order; and

6    3.   The Clerk of Court is DIRECTED to enter judgment in favor of Plaintiff Leslie Lynne

7          Tankersley and against Defendant Commissioner of the Social Security Administration.

8    IT IS SO ORDERED.

9    Dated:    **April 18, 2025**

10                                        UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28